UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Master Docket No. 06-cv-17430-WYD-CBS (MDL Docket No. 1743)

IN RE AMERICAN FAMILY MUTUAL INSURANCE CO. OVERTIME PAY LITIGATION

---

**ORDER**

---

I.    INTRODUCTION

THIS MATTER is before the court on Defendant's motions for summary

judgment.  By way of background, I note that this case was consolidated by the Judicial

Panel on Multidistrict Litigation ("MDLP") pursuant to its Order of February 13, 2006,

and transferred to this court for pretrial purposes.  To date, the consolidated action is

comprised of the following two cases: Rocky Baldozier, et al. v. American Family

Mutual Insurance Co., D. Colorado, Civil Case No. 04-cv-02174-WYD-CBS; and Robert

Schultz v. American Family Mutual Insurance Co., N.D. Illinois, Civil Case No. 06-cv-

00322-WYD-CBS (Northern District of Illinois Civil Case No. 04-cv-05512).

Both the Baldozier and the Schultz Plaintiffs assert class claims against

American Family Mutual Insurance Company for unpaid overtime compensation and

related penalties and damages.  According to the Complaints, Plaintiffs are current or

former American Family vehicle property damage claim adjusters, and seek certification

of a nationwide collective action pursuant to section 16(b) of the Fair Labor Standards

Act ("FLSA"), 29 U.S.C. § 216(b), on behalf of themselves and all similarly situated

American Family employees, based on allegations that American Family unlawfully

classified them as "exempt" from overtime payments under the FLSA, and failed and

refused to pay them overtime.

Plaintiffs in the *Baldozier* case also filed a claim seeking certification of a statewide class action pursuant to COLO. R. CIV. P. 26, on behalf of themselves and all similarly-situated American Family employees in the State of Colorado, based on alleged violations of the Colorado Minimum Wage Act, C.R.S. §§ 8-6-101 *et seq.* and Colorado Minimum Wage Order 22. By prior Order, this Court granted Defendant's Motion to Dismiss the Baldozier Plaintiffs' State Law Claims, but granted Plaintiffs' request for equitable tolling of the statute of limitations as to the FLSA claim. In the *Schultz* case, the District Court for the Northern District of Illinois dismissed Plaintiffs' Rule 23 state law class claims based on alleged violations of state wage laws of states other than Illinois, but denied Plaintiffs' request for equitable tolling of the statute of limitations applicable to their FLSA claim.

Defendant filed a motion for summary judgment in the *Baldozier* case, prior to consolidation by the MDLP, on June 27, 2005 (docket #50). On April 24, 2006, Defendant filed a motion for summary judgment in the consolidated case as to the claims asserted by the *Schultz* Plaintiffs (docket #69). A hearing on the two motions was held on Monday, September 18, 2006. Following the hearing, Defendant filed supplemental authority on October 30, 2006, and again on April 26, 2007. Plaintiffs submitted notice of supplemental authority on August 22, 2007. The central issue to be decided in ruling on Defendant's motions for summary judgment is whether, as a matter of law, the named Plaintiffs are exempt from the FLSA's overtime requirements. Resolution of this issue turns on whether Plaintiffs' primary job duties as Physical

Damage Claim Analysts for American Family qualifies them for status as "administrative employees" under the FLSA. If Plaintiffs are properly classified as "administrative employees," then they are exempt from the FLSA's overtime requirements, and the FLSA claims against Defendant must be dismissed.

## II. ANALYSIS

### A. Standard for Summary Judgment

Pursuant to rule 56(c) of the Federal Rules of Civil Procedure, the court may grant summary judgment where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the ... moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Equal Employment Opportunity Comm. v. Horizon/CMS Healthcare Corp.*, 220 F.3d 1184, 1190 (10th Cir. 2000). "When applying this standard, the court must 'view the evidence and draw all reasonable inferences therefrom in the light most favorable to the party opposing summary judgment.'" *Atlantic Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1148 (10th Cir. 2000) (quotation omitted). "'Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.'" *Id.* (quotation omitted). Summary judgment may be granted only where there is no doubt from the evidence, with all inferences drawn in favor of the nonmoving party, that no genuine issue of material fact remains for trial and that the moving party is entitled to judgment as a matter of law. *Bee v. Greaves*, 744 F.2d 1387 (10th Cir. 1984).

However, only admissible evidence may be considered when ruling on a summary judgment motion. *See World of Sleep, Inc. v. La-Z-Boy Chair Co.*, 756 F.2d 1467, 1474 (10th Cir.), *cert. denied*, 474 U.S. 823 (1985). Conclusory allegations do not establish issues of fact sufficient to defeat summary judgment. *McVay v. Western Plains Service Corp.*, 823 F.2d 1395, 1398 (10th Cir. 1987). "Allegations unsupported by any significant probative evidence tending to support the complaint are insufficient (internal citation omitted), as are conclusory assertions of the existence of factual disputes." *Schrader v. E.G.& G., Inc.*, 953 F. Supp. 1160, 1164 (D. Colo. 1997) (citing *Anderson*, 477 U.S. at 247-48).

B. <u>Overview of the Fair Labor Standards Act</u>

Generally, the Fair Labor Standards Act requires that employers pay their employees overtime for all hours worked in excess of forty (40) hours per week. 29 U.S.C. § 207(a)(1). There is an exemption to this general rule, however, for any employee employed in an "administrative" capacity. 29 U.S.C. § 213(a). An employee entitled to the administrative exemption is defined by the Department of Labor ("DOL") as an individual (1) who is compensated at a rate of not less than $455 per week (or $23,600 per year); (2) whose primary job duty is the performance of office or non-manual work <u>directly related to the management or general business operations of the employer</u> or the employer's customers; and (3) whose primary job duty includes the <u>exercise of discretion and independent judgment</u> with respect to matters of significance. 29 C.F.R. § 541.200(a). (Emphasis added).

According to DOL regulations, an employee's work is "directly related to the

management or general business operations" if the employee performs work directly related to assisting with the running or servicing of the business, as opposed to working on a production line or in sales or retail. 29 C.F.R. § 541.201(a). Work directly related to management or general business operations includes, but is not limited to, work in "functional areas such as tax; finance; accounting; budgeting; auditing; insurance; quality control; purchasing; procurement; advertising; marketing; research; . . . legal and regulatory compliance; and similar activities." 29 C.F.R. § 541.201(b).

The phrase "discretion and independent judgment" involves the comparison and the evaluation of possible courses of conduct and making a decision after various possibilities have been considered. 29 C.F.R. § 541.202(a). The term "matters of significance" refers to the level of importance or consequence of the work performed." *Id.* This factor must be applied in consideration of all of the facts surrounding a particular employment situation including whether the employee has authority to formulate, affect, interpret, or implement management policies or operating practices; whether the employee carries out major assignments; whether the employee performs work that affects business operations to a substantial degree; whether the employee has authority to commit the employer in matters of financial significance; whether the employee has authority to deviate from established policies and procedures; whether the employee has authority to negotiate and bind the company on significant matters; and whether the employee investigates and resolves matters of significance and represents the company in handling complaints, arbitrating disputes or resolving grievances. 29 C.F.R. § 541.202(b). The exercise of discretion and independent

judgment does not require that the decisions made by an employee are not subject to review at a higher level. 29 C.F.R. § 541.202(c). However, it must involve more that the use of skill in applying well-established techniques, procedures or specific standards described in manuals or other sources. 29 C.F.R. § 541.202(e).

Defendant acknowledges that the employer bears the burden of demonstrating that its employees are exempt from the FLSA's overtime provisions. *Aaron v. City of Wichita*, 54 F.3d 652, 657 (10th Cir. 1995). Exemptions to the FLSA are "narrowly construed" against the employer, and must be proved by "clear and affirmative" evidence. *Aaron*, 54 F.3d at 657.

C.    Plaintiffs' Job Duties

In order to determine whether Plaintiffs are exempt from the FLSA's overtime requirements, it is necessary to determine Plaintiffs' primary job duties. When evaluating exemption claims under the FLSA, "[t]he question of how an employee spends his time is a question of fact, while the question of whether his activities fall within an exemption is a question of law." *Jastremski v. Safeco Ins. Co.*, 243 F.Supp.2d 743, 747 (N.D. Ohio 2003) (internal quotation omitted). American Family characterizes the primary job duty of Physical Damage Claim Analysts as "negotiating and resolving claims." Plaintiffs characterize their primary job duty as "inspecting vehicle damage, writing estimates, and issuing payment for the value of the vehicle or the cost of repair." However, after careful examination of the parties' voluminous statements of undisputed facts, responses thereto, and all of the evidence submitted in support and in opposition to summary judgment, I find that the majority of the material

facts involving Plaintiffs' job duties are not in dispute.

American Family is a Wisconsin mutual insurance company. American Family writes and sells insurance policies and resolves claims that arise under its policies. For policyholders who have claims, American Family employs claim personnel to assist in resolving claims. One of the four different claim specialties handled by American Family employees are physical damage claims. All of the named Plaintiffs in this consolidated case were employed by American Family as Physical Damage Claim Analysts ("PDCA"). During the relevant time period, all PDCAs, including the named Plaintiffs, received salaries of more than $455 a week. PDCA's perform non-manual work on claims related to physical damage on automobiles and other vehicles. PDCA's do not create or sell insurance policies or act as underwriters, but serve as one of American Family's representatives who work with insureds, claimants, and repair facilities from the time an insurance claim is filed through settlement or resolution of the claim.

American Family employs PDCAs to work both in the field and in the office. Analysts in the field work out of their homes and receive a company car, a computer, a printer, a camera, a cell phone, a desk for the car and a checkbook. These field analysts are equipped with a full-service office on wheels. They schedule appointments with insureds, claimants and repair facilities and travel to the vehicle to examine the vehicle, gather related facts, and write an estimate or determine the actual value of the vehicle. PDCAs must determine where on the vehicle an impact occurred, whether there are discrepancies between the physical evidence and the reported loss,

whether to repair or replace parts, whether there is hidden damage, whether damages to the vehicle were caused by a prior, unrelated event, and whether the vehicle is a total loss. If the PDCA determines that any part of a claim is attributable to prior damage, he or she excludes that damage from the estimate or factors it into a total loss valuation.

In preparing estimates, PDCAs rely on training, experience, standardized price and labor time information as to replacement operations, vehicle repair industry standards, and American Family's guidelines and procedures, including American Family's required estimating software. American Family has numerous guidelines and standards that PDCAs must follow when writing estimates and valuing total losses. In addition to preparing estimates, PDCAs document underwriting risks and gather information relevant to subrogation claims, but are not involved in the decision to pursue subrogation or work to recover subrogation for American Family.

After preparing a written estimate, the PDCAs work with claimants, insureds and body shops, explain estimates and valuations, and arrive at an agreed price for repair of the vehicle or, in cases where the vehicle was a total loss, an agreed value of the claim. PDCAs are often able to write an estimate, resolve the claim and make payment all in one "on-site" visit. At times, they would examine the vehicle, take notes regarding damage, and complete resolution of the claim from home rather than on-site. American Family characterizes these duties as "negotiations." Plaintiffs dispute this characterization and state that what Plaintiffs were merely required to communicate with claimants, insureds and body shops and persuade them that the estimate

generated by the PDCA is the accurate estimate. This includes explaining how the estimate was generated and the company's obligations under the policy. Plaintiffs contend that the only "give-and-take" negotiations that the PDCA's participated in involved issues such as whether to use an OEM part when the cost was comparable to an aftermarket part or when an aftermarket part was not available. As a general matter the PDCA is required to pay the accurate settlement estimate.

It is undisputed that American Family offers several training courses to Physical Damage Claim Analysts including an Excel development program on customer service that includes a section on "negotiation," and a physical damage skills workshop that addresses topics such as "negotiating" and "estimating, total losses and negotiation skill practice." A subset of the Excel development program requires participants to identify "negotiable" items such as actual cash value, settlement amount, parts' prices, repair time and rental and "non-negotiable" items such as "tax, deductible, and the policy." American Family also offers a course entitled "Advance Negotiations."

All PDCAs work independently on the individual claims assigned to them. PDCAs had flexibility to set their own appointments once a claim is assigned to them and their supervisors were not present when they performed most of their work. However, they were expected to be accessible by phone, write estimates and pay claims on site where the vehicle is located, return calls to agents within specified time-frames and inspect vehicles within specified time-frames. PDCAs' estimates were periodically reviewed by managers. Corporate claims management produces monthly reports called "Dashboard reports" that illustrate how individual PDCAs are performing

relative to various benchmark averages including areas such as percentage of parts dollars spent that are for new parts; the average percentage of National Automobile Dealers Association ("NADA") book values for which the PDCA is settling total losses; percentage of usage of non-original equipment manufacture parts; average repair labor costs; and average repairable claim amounts. PDCAs are evaluated based on their Dashboard report numbers, and whether they follow prescribed guidelines for customer and agent contacts, and follow company procedures for handling claims. In-office PDCAs evaluate written estimates of damages submitted by independent repair facilities, usually without examining the vehicle. These PDCAs rewrite or convert the estimates into American Family's estimating software. Plaintiffs have presented evidence that PDCAs spend the vast majority of their time driving to see vehicles, writing estimates, determining actual cash value, and working with customers and body shops.

The parties dispute Plaintiffs' responsibilities regarding analysis of policy coverage issues. However, it is undisputed that while PDCAs might determine whether a loss was a comprehensive or a collision loss, this determination was usually made before the PDCAs received the claim. PDCAs might also determine if the insured had a policy in effect at the time of the loss, the proper amount of deductible; potential fraud, and whether there is prior damage to the vehicle unrelated to the accident. However, the PDCAs responsibilities regarding fraud issues involved reporting facts to managers and other file handlers. Occasionally, PDCAs were called on to testify regarding their estimates and valuations, or report to America Family's Special

Investigation Unit on a claim, but generally had little contact with the legal department or the Special Investigation Unit.  While PDCAs were charged with evaluating what damage was caused by the accident, they did not "deny coverage" as that term is generally understood.  PDCAs do not make liability, or fault determinations, they do not interview physicians or witnesses, take statements, or perform formal credibility assessments.

Absent claims that are assigned to a PDCA as "appraise only" or claims that involve unresolved coverage issues, each PDCA was assigned a certain "settlement authority limit" and, generally speaking, was able to resolve claims within that specified limit without prior approval of a manager.  For example, Plaintiff Reynolds' settlement authority was the actual cash value of the vehicle up to the insured's policy limits.  In some cases, this authority could be as high as $90,000, depending on the value of the vehicle.[1]  PDCAs can settle claims above their settlement authority with the approval of a manager.  Plaintiff Baldozier estimated that he paid out "over a million dollars" a year to settle claims.  However, Plaintiffs estimate that their average repairable claim amount was under $5,000.  PDCAs were responsible for arriving at an accurate damage or loss estimate and settling individual physical damage claims within their

---

[1] In the hypothetical example used by American Family, if the vehicle at issue was a large, expensive vehicle having an actual cash value of $90,000 and the insured had a policy for $100,000, Plaintiff Reynolds could settle the claim for $90,00 or less without prior management approval.  Plaintiff Baldozier's settlement authority for the period at issue was the actual cash value of the vehicle.  Plaintiff Nicholson's settlement authority was $45,000 for comprehensive and collision claims.  Plaintiff Stack's settlement authority was $20,000.  Plaintiff Schultz's settlement authority was the actual cash value of the vehicle.

D.     Application of Administrative Exemption to Claims Adjusters

"Insurance claims adjusters" are among the examples listed by the DOL of employees who typically meet the administrative exemption if their duties include activities such as "interviewing insureds, witnesses and physicians; inspecting property damage; reviewing factual information to prepare damage estimate; evaluating and making recommendations regarding coverage of claims; determining liability and total value of a claim; negotiating settlements; and making recommendations regarding litigation." 29 C.F.R. § 541.203(a).  A DOL Opinion Letter dated November 19, 2002[2] ("2002 Opinion Letter") discusses the applicability of the administrative exemption to certain insurance claims adjusters under the FLSA.  Opinion Letter 2002 WL 32406601 (DOL WAGE-HOUR).  The 2002 Opinion Letter finds that adjusters primarily involved with the investigation and evaluation of insurance claims who (1) conduct investigations and interview witnesses, insureds, and physicians; (2) weigh factual information and prepare damage estimates including losses due to time lost from work, damages to personal property, bodily injury, and pain and suffering; and (3) evaluate coverage, are subject to the administrative exemption.  The adjusters discussed in the Opinion Letter

---

[2] I note that the DOL regulations regarding the administrative exemption were revised and streamlined in 2004.  However, except for applicable salary levels, the new regulations make no substantive changes to the requirements for the administrative exemption.  See 69 Fed. Reg. 22193 (noting that the new test for the exemption is "very similar, if not functionally identical to the former test."); Opinion Letter 2005 WL 330610 (DOL WAGE-HOUR) (stating that the updated regulations "clarify but make no substantive changes in the primary duty test requirement for the administrative exemption.").

have full authority to negotiate and settle claims within their established authority, even if their settlement authority is relatively low, and make recommendations in preparation for litigation.

A subsequent DOL Opinion Letter, issued January 7, 2005 ("January 2005 Opinion Letter"), reviewed the application of the administrative exemption to certain so-called "junior-level claims adjusters." Opinion Letter 2005 WL 330610 (DOL WAGE-HOUR). In the 2005 Opinion Letter, the Department of Labor concluded that certain junior-level adjusters did not qualify for the administrative exemption, because the primary duties of these adjusters involved "applying their particular skills and knowledge rather than exercising 'discretion and independent judgment with respect to matters of significance.'" *Id.* The activities of these employees is limited to (1) collecting statements and documentation over the telephone phone using a standardized list of questions and entering responses to these questions onto standardized forms; (2) determining payment amount by applying set statutory formula; and (3) making indemnity benefit payments under $1,500 and medical benefit payments under $500. *Id.* These types of adjusters do not make determinations as to coverage, they do not have the authority to negotiate or settle disputed claims, and they do not conduct on-site investigations. *Id.* Where persuasive, DOL's Opinion Letters are entitled to deference. *Skidmore v. Swift & Co.*, 323 U.S. 134, 240 (1944).


In addition to the DOL Opinion Letters, some District and Circuit Courts in other jurisdictions have addressed whether insurance claims adjusters qualify for the

administrative exemption.  Defendant relies heavily on a decision from the Ninth Circuit Court of Appeals in *In re Farmers Ins. Exchange Claims Representatives' Overtime Pay Litigation*, 481 F.3d 1119 (9th Cir. 2007).  In *Farmers*, the adjusters at issue handle automobile damage claims, non-automobile property damage claims, and personal injury claims.  *Farmers*, 481 F.3d at 1124.  The Ninth Circuit held that all of these adjusters were exempt under FLSA regulations because regardless of the type and size of the claim they handled, they all (1) used discretion to determine whether a loss is covered; (2) set reserves; (3) determine liability; and (4) negotiate with the insured.  *Id.*; *see also Jastremski v. Safeco Ins. Companies*, 243 F.Supp.2d 743 (N. D. Ohio 2003) (senior claims representative whose primary duties included determining coverage and loss, investigating, negotiating, and settling claims was exempt); *Palacio v. Progressive Ins. Co.*, 244 F.Supp.2d 1040 (C.D. Cal. 2002) (adjuster who assessed liability, weighed evidence, determined credibility, reviewed insurance policies, negotiated with attorneys and claimants and made recommendations to management was exempt). These cases are instructive to a point, but the duties of the adjusters in those cases are different from the duties of the adjusters in this case in many important respects.  For example, Plaintiffs' primary job duties in this case do not include making coverage determinations, setting reserves, and determining liability.

Plaintiffs rely heavily on two California appeals court cases which found that insurance claims adjusters were not entitled to an administrative exemption and were not engaged in work that is "directly related to management policies or general business operations."  *See Harris v. Superior Court*, 2007 WL 2325580 (Cal. App. Aug.

16, 2007); *Bell v. Farmers Ins. Exchange*, 115 Cal. App. 4th 715 (Cal. App. 2004). While the reasoning in the *Harris* decision is based in large part on several FLSA regulations, both *Harris* and *Bell* were decided under the California Wage Orders regulating the entitlement to overtime pay. Therefore, these cases are of limited value in deciding the issues in this case.

      E.   <u>Application of the Exemption to Plaintiffs</u>

The parties agree that PDCAs do not perform manual labor and earn more than $455 per week. The issue, therefore, is whether Plaintiffs' primary job duties are "directly related to management policies or general business operations," of American Family, and whether those duties includes work "requiring the exercise of discretion and independent judgment." As discussed above, the application of the exemption is to be narrowly construed against American Family.

      1.   <u>Directly Related to General Business Operations</u>

An employee is exempt when his or her primary duty is the performance of work "directly related to the management or general business operations," meaning the employee performs work directly related to assisting with the running or servicing of the business, as opposed to working on a production line or in sales or retail. 29 C.F.R. § 541.201. In the 2002 Opinion Letter, the Department of Labor ("DOL") identified several duties performed by claims adjusters that related to "servicing the business." These duties included responsibility for planning and processing of a claim from beginning to end, representing the company and advising management throughout processing of the claim, determining coverage, evaluating liability, deciding how much

to pay on the claim, establishing a reserve for the claim, making recommendations, collaborating with the company's counsel if the case results in litigation, and negotiating on behalf of the company. *See* 2002 Opinion Letter at 2. The DOL reasoned that because these duties involve servicing the insurance company in the manner that claims adjusters traditionally have done, as reflected in the regulatory reference to claims adjusters, their duties were "administrative" in nature. *Id*.

American Family asserts its primary business function is to design, market and sell insurance policies, and that resolution of claims is an ancillary service to its insureds. American Family cites several cases holding that "claims adjusting" is not the product of an insurance company. *See Jastremski*, 243 F. Supp. 2d at 753 ("the insurance company was in the business of producing insurance policies, not settling claims."). Under this analysis, the only thing American Family produces is insurance policies, and the only "production" workers employed by American Family are those who actually write or sell insurance policies. However, as Plaintiffs note, American Family must do more that demonstrate that Plaintiffs are not "production" workers; they must demonstrate that Plaintiffs' primary job duties are related to "administrative operations." Moreover, it is clear that the "product" American Family is selling includes claims handling services. American Family's chief actuary, Brad Gleason, testified that "American Family's claims handling service is an integral part of the product that American Family offers for sale in the marketplace." Gleason Dep. 42:8-11.

The question, therefore, is whether Plaintiffs' job duties relate to the "administrative operations" of American Family's claims handling service. Plaintiffs

contend that their jobs consist of handling a large volume of relatively small "run-of-the-mill" claims by applying very specific procedures, standards and guidelines, which were developed, set, implemented and enforced by other more senior employees. According to Plaintiffs, this routine, day-to-day work constitutes non-exempt "production" work. Indeed, Plaintiffs' primary job duties do not include many of the examples cited in the 2002 Opinion Letter. For example Plaintiffs' primary job duties do not include assessing credibility, reviewing the insurance policy, determining coverage, evaluating liability, establishing a reserve, negotiations or involvement with litigation. While American Family goes to great lengths in their motions to show that Plaintiffs performed all of these duties at least some of the time, the regulations require an analysis of Plaintiffs' <u>primary</u> job duties. When I construe the facts in the light most favorable to Plaintiffs, it is undisputed that Plaintiffs' primary job duties are to act as representatives of American Family, process their assigned claims from beginning to end, and resolve claims in a manner that places the insured or claimants in the position they were in before the accident, within the parameters of the policy and American Family's regulations. In this regard, Plaintiffs are responsible for "servicing" American Family's claims handling process, and their duties are "administrative" in nature as described in the 2002 Opinion Letter. I reach this conclusion despite the fact that many of the tasks they perform are routine and other, more senior American Family employees are responsible for developing claims service policies and procedures. *See Jastremski*, 243 F.Supp.2d at 752-53; *Palacio*, 244 F.Supp.2d at 1046-47.

2.    <u>Exercise of Discretion and Independent Judgment</u>

American Family must also show that Plaintiffs exercise discretion and independent judgment. DOL defines "discretion and independent judgment" to require "comparison and the evaluation of possible courses of conduct, and acting or making a decision after the various possibilities have been considered." 29 C.F.R. 541.202(a). Discretion and independent judgment must relate to matters of significance. *Id.* "The term 'matters of significance' refers to the level of importance or consequence of the work performed." *Id.* This factor must be applied in light of all the facts and circumstances. Factors to consider in evaluating this factor include:

> whether the employee has authority to formulate, affect, interpret, or implement management policies or operating practices; whether the employee carries out major assignments in conducting the operations of the business; whether the employee performs work that affects business operations to a substantial degree, even if the employee's assignments are related to operation of a particular segment of the business; whether the employee has authority to commit the employer in matters that have significant financial impact; whether the employee has authority to waive or deviate from established policies and procedures without prior approval; whether the employee has authority to negotiate and bind the company on significant matters; whether the employee provides consultation or expert advice to management; whether the employee is involved in planning long- or short-term business objectives; whether the employee investigates and resolves matters of significance on behalf of management; and whether the employee represents the company in handling complaints, arbitrating disputes or resolving grievances.

29 C.F.R. § 541.202(b). It is also important to note that "the exercise of discretion and independent judgment implies that the employee has authority to make an independent choice, free from immediate direction or supervision. However, employees can

exercise discretion and independent judgment even if their decisions or recommendations are reviewed at a higher level.  Thus, the term 'discretion and independent judgment' does not require that the decisions made by an employee have a finality that goes with unlimited authority and a complete absence of review."  29 C.F.R. § 541.202(c).  In addition, "the decisions made as a result of the exercise of discretion and independent judgment may consist of recommendations for action rather than the actual taking of action. The fact that an employee's decision may be subject to review and that upon occasion the decisions are revised or reversed after review does not mean that the employee is not exercising discretion and independent judgment." *Id.*  Further, the "exercise of discretion and independent judgment must be more than the use of skill in applying well-established techniques, procedures or specific standards described in manuals or other sources."  29 C.F.R. § 541.202(e).

In the 2002 Opinion Letter, the DOL concluded that claims adjusters at issue had "complete discretion and independent judgment with regard to all claims within their established authority.  They make all relevant decisions regarding coverage and liability and they negotiate with full authority to attempt to achieve a settlement."  *See* 2002 Opinion Letter at 4.  The DOL reasoned that these adjusters exercised discretion in deciding how to handle all types of claims, and were not merely pursuing "standardized format for resolving claims, but rather are using their own judgment about what the facts show, who is liable, what a claim is worth, and how to handle the negotiations with either a policyholder or a third-party claimant in order to achieve a successful resolution."  *Id.*

American Family maintains that most of what Plaintiffs do involves comparing and evaluating possible courses of conduct. Defendants contend that Plaintiffs exercised a great deal of autonomy and personal independence; interacted with claimants, insureds, lien holders, and repair persons; evaluated coverage and damage issues; conducted investigations; negotiated settlements and participated in litigation. Defendants assert that Plaintiffs set their own schedule and represented American Family in all interactions with insureds, claimants, repair facilities, lien holders and venders. Plaintiffs characterize the work they perform as mechanized and routine and contend they were reviewed according to how quickly they produced and how consistently they adhered to the company's claims-handling policies and procedures. Plaintiffs contend that their jobs required skill, but not the use of discretion, because American Family guidelines dictate the inspection procedures and because they rely heavily on American Family's specific procedures and guidelines and software. Plaintiffs note that they have no authority to deviate from the estimates generated by American Family's software.

In a sense, all employees exercise some amount of discretion and compare and evaluate possible courses of conduct. However, I must determine whether these Plaintiffs exercise discretion and independent judgment in light of all of the facts involved in Plaintiffs' particular employment situation. *See* 29 C.F.R. § 541.202(b). Here, construing the facts in the light most favorable to Plaintiffs, I conclude, for purpose of ruling on Defendant's summary judgment motions, that Plaintiffs have no authority to formulate management or operating policies, they have no authority to

waive or deviate from established policies, and do not represent American Family in resolving disputes that arise from the claims they handle. 29 C.F.R. § 541.202(b). The parties dispute the financial impact of Plaintiffs' claims handling duties; however, my conclusion would be the same even if American Family could show that Plaintiffs' conduct, in the aggregate, had significant financial impact. "An employee does not exercise discretion and independent judgment with respect to matters of significance merely because the employer will experience financial losses if the employee fails to perform the job properly." 29 C.F.R. § 541.202(f). I find that Plaintiffs' job duties truly involve the application of skill in applying well-established "techniques, procedures or specific standards described in manuals or other sources," as opposed to duties that involve the ability to make independent choices free from immediate direction or supervision. 29 C.F.R. § 541.202(c) & (d).

I also find that the DOL's description of the job duties of adjusters in the 2002 Opinion Letter are different from the job duties of Plaintiffs in this case in many significant respects. First, PDCAs do not have complete discretion and independent judgment with respect to the claims they handle. While PDCAs work independently, they process claims within the guidelines established by American Family. In addition, PDCAs do not make coverage determinations, they do not use their own judgment to determine the value of a particular claim, nor do they determine who is liable. Finally, PDCAs do not engage in meaningful "negotiation" of claims. PDCAs are required to write an accurate damage or total loss estimate and reach agreement with claimants by explaining how they generated this estimate. PDCAs did not have the authority to

deviate from prescribed estimating procedures and, therefore, they had no real ability to negotiate the claims they resolved.

In conclusion, I find that American Family has not demonstrated that Plaintiffs are subject to the administrative exemption, because they have not shown that Plaintiffs exercise discretion and independent judgment as to matters of significance. Because Illinois Law tracts the FLSA, and Illinois courts have determined that the two statutory schemes are co-extensive, this conclusion applies with equal force to American Family's assertion that the *Schultz* Plaintiffs are exempt from overtime under Illinois Law.

### E. Statute of Limitations

Under the FLSA, the statute of limitations for a violation is two years, unless an employer's violation is deemed willful, in which case the statute of limitations is three years. *See* 29 U.S.C. § 255(a). Prior to transfer of the *Schultz* case, the district court in that case ruled that equitable tolling did not apply to the claims made by the *Schultz* Plaintiffs. American Family asserts that in the event I determine that American Family has not demonstrated that Plaintiff Schultz was exempt, I should grant partial summary judgment, and limit their claims to two years. Plaintiffs in the *Schultz* case responded to this argument in their opposition to American Family's motion for summary judgment, but subsequently filed a Rule 56(f) motion for extension of time on September 14, 2006, requested an extension of time to respond to this argument. Attached to the motion is the affidavit of Laurie E. Leader which states that Plaintiffs have been unable to participate in the continued depositions of two witnesses - Michael Canney and Steve

Maxwell - both of whom have information relevant to the issue of willfulness. Plaintiffs note that the Magistrate Judge stayed discovery in this case pending resolution of the parties' motions for summary judgment prior to the completion of these depositions.

District courts exercise discretion in deciding whether to grant a Rule 56(f) motion. Defendants assert that Plaintiffs have known about the "willfulness" issue since April, 2005. They further note that Magistrate Judge Shaffer directed the Schultz Plaintiffs to either file a substantive response to the motion for summary judgment or a Rule 56(f) motion, but not both. Despite Plaintiffs' delay, I find that additional discovery would be helpful on this issue. Plaintiffs contend that American Family received a letter on January 16, 1980 from the United States Department of Labor advising them that DOL "has not accepted the premise that [American Family was] in compliance with all the provisions of the [FLSA]" with respect to their classification of auto damage appraisers as exempt from overtime provisions. In addition, sometime in 2004, American Family considered a plan to reclassify employees similarly situated to Plaintiffs as nonexempt employees entitled to overtime, but decided not to do so. The individuals Plaintiffs seek to depose are alleged to have information regarding these events.

Therefore, I will grant Plaintiffs' Rule 56(f) motion, and permit Plaintiffs to file a supplement to their response to American Family's statute of limitations argument in the *Schultz* case after completing the depositions of Michael Canney and Steve Maxwell. American Family may file a reply to Plaintiffs' supplemental response.

III.    CONCLUSION

For the reasons set forth above, it is hereby

ORDERED that American Family's Motion for Summary Judgment on FLSA Claim, filed June 27, 2005 (docket #50) in Civil Action No. 04-cv-02174 is **DENIED**. It is

FURTHER ORDERED that Defendant American Family's Motion for Summary Judgment in the *Schultz* Lawsuit, filed April 24, 2006 (docket #69) in Civil Action No. 06-cv-17430 is **DENIED**, except that I defer ruling on the portion of the motion dealing with whether the *Schultz* Plaintiffs' claims should be limited by the statute of limitations for the reasons set forth herein. It is

FURTHER ORDERED that the Schultz Plaintiffs' FRCP 56(f) Motion and Affidavit of Continuance on the Issue of Willfulness, filed September 8, 2006 (docket #110) is **GRANTED** as set forth herein.

Dated: October 9, 2007

BY THE COURT:

s/ Wiley Y. Daniel
Wiley Y. Daniel
U. S. District Judge