UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

---

Master Docket No. 06-cv-17430-WYD-CBS (MDL Docket No. 1743)

IN RE AMERICAN FAMILY MUTUAL INSURANCE COMPANY
OVERTIME PAY LITIGATION

---

### AMERICAN FAMILY'S BRIEF IN OPPOSITION TO SUPPLEMENTAL NOTICE

---

On November 16, 2007, the Baldozier plaintiffs moved this Court to send what would amount to a *third* FLSA notice to American Family employees, soliciting them to opt into this lawsuit. MDL dkt. #141. Less than a week later, Plaintiff Schultz moved to send a competing notice to a subset of employees identified by the Baldozier plaintiffs.[1] MDL dkt. #145. Two weeks later, the Baldozier plaintiffs and Plaintiff Schultz apparently decided to work together: Plaintiff Schultz amended his motion to send supplemental notice to employees in Illinois, Indiana, Iowa and Missouri, and the Baldozier plaintiffs amended their motion to send notice to employees in the other states in which American Family does business. MDL dkt. ## 149, 152. Because supplemental notice is not warranted, American Family requests that the Court deny both motions.

### ARGUMENT

**I.  The Law Does Not Support Sending Supplemental Notice.**

The plaintiffs have not cited even one case in which a court has ordered supplemental notice. While there is little case law on the issue, the few courts that have considered the propriety of a

---

[1] The original Schultz motion was at odds with the original Baldozier motion. Schultz asserted that some Representatives, Analysts and Examiners hired after August of 2005 were given notice of their right to opt in to Schultz and therefore, notice should be sent only to employees hired after January 25, 2006, not August 5, 2005 as the Baldozier plaintiffs suggested. Schultz Mot., MDL dkt. #145 at 2 n.2. Plaintiff Schultz argued that a combined notice should issue, advising recipients that they can opt into either case.

second opt-in notice have done so amid concerns that the first notice was misleading or that a second notice was warranted due to attorney misconduct. Neither circumstance is present here. For example, in Walker v. Mountain States Tel. & Tel. Co., 112 F.R.D. 44, 46 (D. Colo. 1986), the court ordered corrective notice to potential opt-in plaintiffs because the original notice sent by plaintiffs failed to explain that they had a right to obtain their own counsel, consent forms were sent without notice to opposing counsel, and forms incorrectly purported to give consent to representation of claims other than the collective action claim. In contrast, in Saunders v. Ace Mortgage Funding, Inc., 2007 WL 1190985 (D. Minn. April 16, 2007), the court held that a corrective FLSA notice was unnecessary because the first notice adequately informed the potential opt-in plaintiffs of the lawsuit and was not misleading. Id. at *12-*13. In addition, the court held that a second notice was not warranted by plaintiffs' allegations of employer misconduct. Id. at *13.

Courts that have considered supplemental notice in the context of an opt-out Rule 23 class are in accord. See, e.g., In re Sprint Corp. ERISA Litig., 443 F. Supp. 2d 1249, 1266 (D. Kan. 2006) (declining to order another Rule 23 notice because prior notice was not materially misleading); In re United Telecommunications, Inc. Securities Lit., 151 F.R.D. 127, 129 (D. Kan. 1993) (failure to print paragraph in notice in bold pursuant to parties' agreement was not sufficiently egregious deficiency to warrant supplemental corrective notice); Parks v. Eastwood Ins. Servs., Inc., 235 F. Supp. 2d 1082, 1085 (C.D. Cal. 2002) (denying corrective notice because defendant did not engage in misconduct).[2]

---

[2] Cf. Georgine v. Amchem Prods., Inc., 160 F.R.D. 478, 502-03 (E.D. Pa. 1995) (where counsel sent deceptive communications to some class members outside of court-approved notice, court would do minimum necessary to correct improper conduct and authorized corrective notice only to those who opted out and may have received deceptive communications); Haffer v. Temple Univ., 115 F.R.D. 506, 514 (E.D. Pa. 1987) (ordering corrective notice where defendants violated court order with statement implying court preferred potential plaintiffs not to participate in suit).

Moreover, the plaintiffs' rationale, that American Family has hired new employees since the last notice was sent, will continue to be true until the date of judgment. If such facts were sufficient to justify another notice, there would be scores of cases in which courts ordered supplemental notice. The fact that there are so few cases on the issue suggests the impropriety of plaintiffs' requests.

In addition, just how many times do plaintiffs intend to seek notice? Magistrate Judge Shaffer recently set a final pretrial conference for February 2009. Do plaintiffs intend to seek yet *another* notice six months from now? Right before trial? Such repetitive serial notice raises not only due process concerns (see, infra, IV), but tremendous management issues for both the Court and the parties. The continual addition of opt-in plaintiffs would result in another round of discovery, revisions to expert reports, revisions to Rule 26 disclosures, etc.[3]

The request for yet another notice is particularly inappropriate here where employees have received notice about a possible claim for overtime not once, but *twice* already. Moreover, the Baldozier plaintiffs are requesting class certification of four state law Rule 23 classes and Schultz has recently filed for certification of an Illinois Rule 23 state law class action.[4] Certification of these state law classes potentially would require five more notices, with a result that this Court would end up overseeing *eight* separate notices. And, if the Court accepts plaintiffs' unprecedented theory that simply hiring new employees justifies another round of notice, eight notices will not be the end.

II.     **Plaintiffs Have Not Meet Their Burden to Show Similarly Situated.**

Even if plaintiffs could somehow justify sending another notice, their motions should still be

---

[3] If the Court allowed supplemental notice and followed the same procedure as it did originally, it is likely that notice would not issue before January or possibly February and the opt-in period would not close until April or May. This would wreak havoc with Magistrate Shaffer's recent scheduling order, requiring expert reports by June 2, 2008 and discovery to close on August 29, 2008. MDL dkt. #147.

[4] The Baldozier plaintiffs indicated in a recent letter to American Family that they intend to withdraw their request for certification of an Illinois state law class. To date, however, they have not done so.

denied because currently there are no employees that hold the positions for which plaintiffs want to send notice and plaintiffs have offered no evidence that current employees in reorganized jobs are similarly situated to the named FLSA plaintiffs in these lawsuits.

As this Court is well aware, while 29 U.S.C. § 216(b) permits collective actions, there is no requirement that FLSA actions proceed collectively and no presumption that all employees are similarly situated. Dolan v. Project Constr. Corp., 725 F.2d 1263, 1267 (10th Cir. 1984), abrogated on other grounds, Hoffmann-La Roche, Inc. v. Sperling, 493 U.S. 165, 173 (1989) ("§ 216(b) fails to provide for mandatory notice to similarly situated employees since no individual rights are jeopardized by the FLSA procedures"). Plaintiff bears the burden of proving similarly situated. Bayles v. Am. Med. Response of Colo., Inc., 950 F. Supp. 1053, 1067 (D. Colo. 1996). Unsupported assertions of widespread violations are not sufficient to meet plaintiff's burden of demonstrating that others are similarly situated. Haynes v. Singer Co., Inc., 696 F.2d 884, 887 (11th Cir. 1983). Here, both the Baldozier plaintiffs and Plaintiff Schultz ask for notice to be sent to Physical Damage Claim Representatives, Analysts and Examiners. Plaintiffs assume that such job positions still exist and that employees in those positions are similarly situated to the named plaintiffs. This assumption is incorrect.

Beginning in the summer of 2006, American Family's Claims department underwent a significant reorganization. Hansen Aff., ¶2. The reorganization, called Reinventing Claims, affected most lines of insurance (auto, property, commercial, farm-ranch) and impacted all levels of employees from those holding the title of director on down. Id. There were four main components to Reinventing Claims: (1) creation of Customer Care Centers; (2) consolidation of claims offices; (3) job design; and (4) centralization of back-end processing. Hansen Aff., ¶3.

With the creation of the Customer Care Centers, American Family changed the way it processes claims. Hansen Aff., ¶¶4, 9. Now, the majority of claims are routed through the Customer Care Centers. Each claim is classified in one of four tiers. On the continuum of claims, Tier 1 and Tier 2 claims are considered less complex; Tier 3 and Tier 4 are more complex. Hansen Aff., ¶9 & Ex. A. Physical Damage Auto Representatives in the Customer Care Centers handle the less complex Tier 1 and Tier 2 claims over the phone. Hansen Aff., ¶9. The more complex Tier 3 and Tier 4 claims are referred to desk adjusters or field adjusters who handle them. Id.

The creation of the Care Centers changed most jobs within the Claims department. Some new positions were created, others were re-designed, and some were eliminated. Hansen Aff., ¶6. The Compensation department, with help from the Claims department, conducted a pricing analysis for the positions and wrote new job descriptions to correspond with the change in job duties. Id.

As a result of the significant reorganization, American Family eliminated the positions formerly known as Claim Analyst and Claim Examiner, and no longer has Claim Representatives that are classified as exempt. Hansen Aff., ¶8. For physical damage claims, American Family now has ten positions below the manager level. In its Customer Care Centers, it employs Customer Care Center Associate Representatives, Auto Representatives and Auto Senior Representatives. Id. In its claims offices, it employs Claim Associate Adjusters, Physical Damage Desk Adjusters, and Physical Damage Desk Senior Adjusters. Id. In the field, American Family has Physical Damage Field Adjusters, and Physical Damage Field Senior Adjusters. Finally, it also has Physical Damage Bilingual Adjusters, and Physical Damage Bilingual Senior Adjusters. Id. Claims personnel in the Care Centers are nonexempt and paid hourly. Hansen Aff., ¶¶9-10. The other claims employees, except Associate Adjusters, are exempt and paid a salary. Hansen Aff., ¶9. None of the named

FLSA plaintiffs in Baldozier or Schultz have served in any of these positions.

In addition, as part of the reorganization, American Family centralized some processing duties, some of which adjusters previously performed. Hansen Aff., ¶7. For example, previously, the physical damage adjuster assigned to each claim might determine any rental that was part of the claim. Id. American Family now has centralized its adjustment of rental coverage and for the most part, all rental determinations go through its Madison and Appleton, Wisconsin offices. Id.

The change in claims positions occurred in two waves. Most of the adjuster positions were changed during the first wave, which was completed in July 2006. Hansen Aff., ¶10. The second wave, which included mainly non-adjuster management and staff positions, was completed in September 2006. Id. The last date for all claims employees to be in the new job descriptions was November 10, 2006. Id. After that date, no employee had the title of Physical Damage Claim Analyst or Physical Damage Claim Examiner. Id. Further, employees with the new title Physical Damage Representative now work in the Care Centers and are nonexempt and paid hourly. Id. In sum, the positions that the four named FLSA plaintiffs in Baldozier and Schultz held—Physical Damage Claim Analyst or Physical Damage Claim Examiner—no longer exist.

Accordingly, American Family respectfully requests that the Court deny plaintiffs' motions for supplemental notice to Physical Damage Representatives, Analysts and Examiners because: (1) the positions of Analysts and Examiners do not exist; (2) the position of Representative has been dramatically changed to handle less complex claims by phone and people in those positions are nonexempt and currently receiving overtime; and (3) plaintiffs have not offered any evidence that employees in the reorganized new positions are similarly situated to the named plaintiffs.

### III. This Court is Not Obligated to Allow Supplemental Notice.

The Baldozier plaintiffs boldly state that if the Court denies their motion, they will circumvent that ruling by filing another lawsuit and then asking the MDL Panel to send it to this Court, effectively forcing the Court to oversee notice again anyway. In making this argument, the Baldozier plaintiffs seem to imply that the Court must grant their motion. This is not true.

District courts have discretion to authorize notice to similarly situated employees in FLSA actions, but notice is by no means mandatory. See Hoffmann-La Roche, Inc. v. Sperling, 493 U.S. 165, 169 (1989); Camper v. Home Quality Mgmt. Inc., 200 F.R.D. 516, 519 (D. Md. 2000) ("The relevant inquiry then is not whether the Court has discretion to facilitate notice, but whether this is an appropriate case in which to exercise discretion.").

As the Court recognized in prior rulings, there needs to be a finite end to the notice process. For example, after the opt-in period closed, the Baldozier plaintiffs sought disclosure of a plaintiff who filed an untimely consent. See Bald. dkt. #137. In denying that request, this Court reasoned, "I am not inclined to permit any individual who did not timely file their consent to sue form to join this lawsuit." Bald. dkt. #167 at 2. Similarly, this Court should exercise its discretion to deny plaintiffs' current and unwarranted efforts to enlarge this collective action.

### IV. Repeated Serial Notice is Unfairly Punitive and Violates Due Process.

Courts have recognized that repeated litigation over the same issue is harassment, unfairly punitive and can constitute a violation of due process. See, e.g., Continental Can Co., U.S.A. v. Marshall, 603 F.2d 590, 597 (7th Cir. 1979) (agreeing with district court's finding that requiring defendant to relitigate an issue over and over was "harassment in violation of due process" and that "[t]his conclusion requires little discussion as it appears rather fundamental that the Government

7

cannot, without violating due process, needlessly require a party to undergo the burdens of litigation."). Similarly, plaintiffs' request to send notice repeatedly to American Family employees inviting them to sue their employer and alleging that American Family violated the law is harassment in violation of due process.[5] American Family must compete in the marketplace for employees to adjust its claims. Repetitive notice, when there has been no finding of liability, hurts American Family's reputation and hinders its ability to be competitive in the hiring of adjusters. This is especially unfair where, as here, the two-step notice requirement articulated in Thiessen v. Gen. Elec. Capital Corp., 267 F.3d 1095, 1105 (10th Cir. 2001), has permitted initial notice on the basis of only plaintiffs' conclusory allegations.

## V.   There is No Basis for Equitable Tolling.

Both the Baldozier plaintiffs and Plaintiff Schultz seek equitable tolling of the statute of limitations for any new opt-in plaintiffs. Although they do not specify any actual tolling date, they argue that equitable tolling is warranted because: (1) "Defendant has refused to provide Plaintiffs with names and contact information for PDRs hired since the original notice was sent"; and (2) the two-year delay since the last notice "was caused by factors completely outside of Plaintiffs' control—consolidation of the cases as an MDL and litigation of Defendant's Motions for Summary Judgment." Bald. Mot., MDL dkt. #141 at 7; Schultz Mot., MDL dkt. #145 at 3 (adopting Baldozier plaintiffs' arguments). Neither the facts nor the law support plaintiffs' request.

First, the factual bases for plaintiffs' motions are not accurately stated and are insufficient to

---

[5] Indeed, even Congress recognized the need to prevent employers from being subjected to excessive litigation tactics. In enacting the Portal-to-Portal Act, Congress banned representative actions, requiring employees to affirmatively opt-in to a lawsuit and become a party plaintiff to recover under the FLSA. 29 U.S.C. §216(b) Congress codified its concerns about excessive litigation, noting that banning representative actions was necessary because "the courts of the country would be burdened with excessive and needless litigation and champertous practices would be encouraged." 29 U.S.C. §251.

8

justify equitable tolling. Plaintiffs first requested information as to recently hired PDRs on November 15, 2007, when Baldozier plaintiffs' counsel confirmed by telephone that American Family opposed the motion for supplemental notice. American Family's counsel did decline to supply the information, but refusing a request made one day before the filing of the motion for supplemental notice hardly supports equitable tolling.[6]

Moreover, the Baldozier plaintiffs had no right to that information. This Court did not grant the Baldozier plaintiffs' original request that they receive the names and addresses of the potential opt-in plaintiffs. At the July 1, 2005 hearing on the Baldozier plaintiffs' motion to send Hoffmann-La Roche notice, the following exchange occurred:

> THE COURT: Any other issues that would preclude the parties from reaching an agreement on form of notice?
>
> MR. FINBERG: I guess, Your Honor, we would request that although only special master gets the Social Security numbers, that we could get the names and addresses of these people.
>
> THE COURT: At the time they go to the special master?
>
> MR. FINBERG: Yes, Your Honor. That we would not get the Social Security numbers.
>
> THE COURT: Why do you need the names and addresses?
>
> MR. FINBERG: That just facilitates our ability to facilitate notice.
>
> THE COURT: Well, I think that my concept was that the special master would be a neutral person, who wouldn't have any allegiance to either side. And the special master, then, would be authorized to [the] set of information and send out the notices *and that when the folks opt in, at that point their names and addresses*

---

[6] The Baldozier plaintiffs received some of the names and contact information for PDRs hired after August 5, 2005 (the date of their original notice) anyway. After the MDL Panel transferred Schultz to this Court for discovery purposes, the Court ordered American Family to produce the Schultz discovery to Baldozier plaintiffs' counsel and vice versa. March 8, 2006 Tr., MDL dkt. #34 at 4-16. As part of this discovery production, the Baldozier plaintiffs received contact information for all PDRs employed between January 25, 2003 through January 25, 2006.

9

*would be disclosed to all counsel.* Isn't that what we're talking about?

MR. MUNSON: The names and addresses of the persons who opt in, that's right.

THE COURT: Who opt in. I think I'm going to do that, Mr. Finberg.

MR. FINBERG: Very well, Your Honor.

THE COURT: *It's not that I don't trust you, but I want to have a more conservative approach here.* Is that acceptable to both sides, subject to your working out the details of the order?

MR. MUNSON: Yes, sir.

MR. FINBERG: Yes, sir.

July 1, 2005 Tr., Bald. dkt. #64 at 45-47 (emphasis added).

Second, the Baldozier plaintiffs' assertion that the delay from consolidation of the cases as an MDL proceeding was a factor completely outside of their control is untrue. The Baldozier plaintiffs were the ones that moved the MDL Panel for consolidation, over both American Family's and Schultz's objections.

Even if plaintiffs' factual basis for the motions were true, there is no legal basis for equitable tolling for several reasons. First, as to Plaintiff Schultz, Judge Guzman has already rejected his request for equitable tolling. Plaintiff Schultz previously asked the District Court in Illinois to toll the statute of limitations from the date of the complaint because "until he learns their identities, he cannot advise them of their right to opt in to this suit." Schultz v. American Family Mut. Ins. Co., 2005 WL 5909003, *5 (N.D. Ill. Nov. 1, 2005). The court rejected his request, reasoning that "Ignorance of a lawsuit, however, is not the same as ignorance of a claim" and that Schultz had not shown that the prospective plaintiffs were unable to discover American Family's alleged FLSA violations. Id. The Court went on to hold that "there is no basis for tolling." Id.

The law of the case doctrine precludes Schultz from asking this Court to reverse that ruling. The law of the case provides that "'once a court decides an issue, the same issue may not be relitigated in subsequent proceedings in the same case.'" Grigsby v. Barnhart, 294 F.3d 1215, 1218 (10th Cir. 2002) (quotation omitted). Both the Tenth and Seventh Circuit Courts of Appeals have recognized the importance of the doctrine, especially when a litigant seeks to undermine a ruling from a transferor court. The Seventh Circuit explained:

> In situations where a different member of the same court re-examines a prior ruling, "the law of the case doctrine . . . reflects the rightful expectation of litigants that a change of judges midway through a case will not mean going back to square one." Best v. Shell Oil Co., 107 F.3d 544, 546 (7th Cir. 1997). The second judge may alter previous rulings in certain circumstances, but "he is not free to do so . . . merely because he has a different view of the law or the facts from the first judge." Id. (quoting Williams v. C.I.R., 1 F.3d 502, 503 (7th Cir. 1993)). So, "the presumption is that earlier rulings will stand, even though it can be overcome for compelling reasons (such as new controlling law or clear error)." Best, 107 F.3d at 546.

Mendenhall v. Mueller Streamline Co., 419 F.3d 686, 691 (7th Cir. 2005). Similarly, the Tenth Circuit has held:

> [W]hen an action is transferred, it remains what it was; all further proceedings in it are merely referred to another tribunal, leaving untouched whatever has been already done." . . . Accordingly, traditional principles of law of the case counsel against the transferee court reevaluating the rulings of the transferor court, including its transfer order. . . . A prior ruling of a transferor court therefore may be reconsidered when the governing law has been changed by the subsequent decision of a higher court, . . . when new evidence becomes available, . . . when a clear error has been committed or to prevent manifest injustice. . . .

Chrysler Credit Corp. v. Country Chrysler, Inc., 928 F.2d 1509, 1516 (10th Cir. 1991) (citations omitted). Plaintiff Schultz has not cited any new law or shown that Judge Guzman's earlier ruling is clear error. Accordingly, under the law of the case, Schultz's motion for equitable tolling of the statute of limitations should be denied.

Second, the Baldozier plaintiffs' motion for equitable tolling assumes that this Court has

already granted equitable tolling for purposes of an employee's substantive statute of limitations and not just for determining to whom notice should be sent. American Family disagrees that this Court has enlarged the opt-in plaintiffs' statute of limitations substantively or that substantive tolling is warranted.

> At the hearing on July 1, 2005, this Court addressed the issue of equitable tolling, stating:
>
>> Now, what I'm going to do, I'm going to grant the motion for approval of Hoffmann-La Roche notice. Also, I'm going to grant that portion of the motion that requests equitable tolling, *which means that I will allow the notice to go back to persons who worked in the designated capacities for and with American Family from October 20, 2001, to the present.*

July 1, 2005 Tr., Bald. dkt. #64 at 36 (emphasis added). The Court's written order similarly stated:

> Based on the substantial allegations in Plaintiffs' Complaint, as well as the various Declarations filed by Plaintiffs, I find that initial certification of this action is appropriate *for purposes of sending notice* to potential class members. In addition, I find that Plaintiffs' FLSA claims should be equitably tolled as of the date Plaintiffs' filed their Complaint on October 20, 2004.

Order, Bald. dkt. #63 at 7 (emphasis added). American Family asked the Court to certify its opinion to the Tenth Circuit or, in the alternative, to clarify its ruling whether equitable tolling was being granted substantively or for purposes of notice. Bald. dkt. #68. This Court denied the motion, holding that American Family did not meet the criteria for certification, and declined American Family's request for clarification. Bald. dkt. #74 at 5.

The Baldozier plaintiffs cite only Partlow v. Jewish Orphans' Home of So. Cal., Inc., 645 F.2d 757 (9th Cir. 1981), as support for equitable tolling (and Schultz simply relies on Baldozier). Partlow, however, is inapposite. There, the court tolled the statute of limitations for 69 opt-in plaintiffs whose consents were invalidated due to their counsel's "improper conduct." Id. at 760. Further, the court tolled the limitations only for 45 days to allow those with ineffective consents to

file new ones; it did not equitable toll their statue of limitations to the date of the complaint.[7]

Generally, the statute of limitations continues to run as to each plaintiff in an FLSA action until he or she files a consent to opt in to an action. 29 U.S.C. §216(b) & §256(b); Harkins v. Riverboat Servs., Inc., 385 F.3d 1099, 1101 (7th Cir. 2004). This is true regardless of the date the complaint or the fact that other consents were filed. Grayson v. K Mart Corp., 79 F.3d 1086, 1105-06 (11th Cir. 1996), cert. denied sub. nom., Helton v. K Mart Corp., 579 U.S. 987 (1996).[8]

The Tenth Circuit has construed equitable exceptions to statutes of limitations narrowly. See, e.g., Biester v. Midwest Health Servs., Inc., 77 F.3d 1264, 1269 n.2 (10th Cir. 1996) ("extraordinary circumstances" are "necessary to justify equitable tolling under established Tenth Circuit precedent"); Hulsey v. K Mart, Inc., 43 F.3d 555, 557-58 (10th Cir. 1994) (equitable tolling requires

---

[7] The Baldozier plaintiffs also assert in their motion that when they originally asked for Hoffmann-La Roche notice, they argued for equitable tolling on the alleged basis that American Family did not post legally required notices. Mot. at 6. However, American Family submitted the affidavits of Berrlin Collins, Brian Wells, and Daniel Call stating unequivocally that those notices were posted. The Baldozier plaintiffs asserted that they did not recall seeing the notices (hardly surprising as several worked out in the field), but their lack of recollection does not put into dispute affirmative testimony from American Family's witnesses. American Family's posting of the legally mandated overtime notices precludes equitable tolling as a matter of law. See Posey v. Skyline Corp., 702 F.2d 102 (7th Cir. 1983) (summary judgment proper where defendant's testimony indicated that ADEA notice was posted and plaintiff stated only that he did not recall seeing one); English v. Pabst Brewing Co., 828 F.2d 1047, 1049-50 (4th Cir. 1987) (same); Dillman v. Combustion Eng'g, Inc., 784 F.2d 57, 60 (2d Cir. 1986); Dunham v. McLaughlin Body Co., 812 F. Supp. 867, 870 (C.D. Ill. 1992) (holding that a single posting of an ADEA notice was sufficient to defeat an equitable tolling claim); German v. Pena, 88 F. Supp. 2d 216, 221 (S.D.N.Y. 2000).

[8] If plaintiffs seek equitable tolling from the date of the complaint, they are confusing an FLSA collective action with a Rule 23 class action. A Rule 23 named plaintiff represents those in the class; thus, class members' statute of limitations typically run from the filing of the complaint. American Pipe & Constr. Co. v. Utah, 414 U.S. 538, 550 (1974) ("Under present Rule 23, . . . the filing of a timely class action complaint commences the action for all members of the class as subsequently determined."). In contrast, an FLSA named plaintiff does not represent any other opt-in; each opt-in has party status. Cameron-Grant v. Maxim Healthcare Servs., 347 F.3d 1240, 1249 (11th Cir. 2003); 7B Charles Alan Wright et al., Fed. Prac. & Proc. §1807 (Thomson/West CD-ROM 2005). Because those who file consents are co-plaintiffs, their statutes of limitations begin to run when they commence suit, that is, when they file a consent to join the action. Harkins, 385 F.3d at 1101; Grayson, 79 F.3d at 1105-06. Indeed, if plaintiffs' equitable tolling request was truly based on the failure to provide contact information, plaintiffs would be requesting equitable tolling from American Family's alleged refusal, not the date of the complaint, a distinctly Rule 23 tolling mechanism.

active deception by the employer). Indeed, the Tenth Circuit has stated that it is "well settled" that equitable tolling is appropriate "only where the circumstances of the case 'rise to the level of active deception' . . . [and] where a plaintiff has been 'lulled into inaction by her past employer, state or federal agencies, or the courts.'" Biester, 77 F.3d at 1267 (citations omitted). In addition, "if a plaintiff is 'actively misled' or 'has in some extraordinary way been prevented from asserting his or her rights,'" a court may permit equitable tolling. Id. (citations omitted).

The failure to disclose new employees' names and contact information can hardly constitute "extraordinary circumstances," especially where: (1) that information was not timely requested; (2) the Court-ordered opt-in period for the FLSA collective action expired nearly two years ago, so any consents forms filed after that time would have been untimely, as reflected by the Court's previous ruling on this exact issue; (3) the Court has not determined the propriety of sending supplemental notice; and (4) American Family has made no effort to conceal these lawsuits, but in fact has sent written notice of them to nearly 900 current and former employees. See, e.g., De Asencio v. Tyson Foods, Inc., 2002 WL 1805534 (E.D. Pa. Aug. 6, 2002) (employer's refusal to provide employees' names and addresses would not warrant equitable tolling); Jacobsen v. Stop & Shop Supermkt. Co., 2004 WL 1918795, *3-4 (S.D.N.Y. Aug. 27, 2004) (same); Gerlach v. Wells Fargo & Co., 2006 WL 824652, *5 (N.D. Cal. March 28, 2006) (same); Groshek v. Babcock & Wilcox Tubular Prods. Div., 425 F. Supp. 232, 234 (E.D. Wis. 1977) (statute of limitations was not tolled pending determination of maintainability of class action). Indeed, in Fichtner v. American Family Mut. Ins. Co., 2004 WL 3106753,*10 (D. Ore. March 1, 2004), the district court stated:

> As for equitable tolling, plaintiff's argument that defendant's refusal to provide information on other employees is not the sort of exceptional circumstance justifying tolling. The alleged discovery refusal does not present wrongful conduct on the part of the defendant that prevents potential plaintiffs from asserting their claims. At

14

> best, plaintiff presents evidence that potential plaintiffs did not know of this action, not that defendant prevented potential plaintiffs from knowing about an FLSA violation. Moreover, plaintiff's assertion of defendant's egregious discovery violation lacks merit in light of plaintiff's failure to file a motion to compel. Accordingly, the court declines to toll the statute of limitations for any plaintiffs who may seek to opt-in to this action.

In sum, the law does not support enlarging plaintiffs' statute of limitations through equitable tolling.

### VI.   This Court Did Not Grant Summary Judgment to Plaintiffs on Liability.

Plaintiffs' motion for supplemental notice seems to presume that this Court's denial of American Family's motions for summary judgment was a ruling in their favor on liability, i.e., a ruling that plaintiffs are not exempt administrative employees as a matter of law. Bald. Mot., MDL dkt. #141 at 3 ("The Court denied both [summary judgment] motions on October 9, 2007, holding that the plaintiff PDRs are not exempt from the FLSA's overtime requirements as a matter of law."). The Court's decision, however, only denied summary judgment to American Family; it did not grant judgment to plaintiffs. Order, MDL dkt. #130 at 24. The Court held only, "[h]ere, *constructing the facts in the light most favorable to Plaintiffs, I conclude, for purpose of ruling on Defendant's summary judgment motions*," that plaintiffs do not meet the administrative exemption. Order, MDL dkt. #130 at 20 (emphasis added). The Court correctly noted earlier in the opinion, "When applying this standard [for summary judgment], the court must 'view the evidence and draw all reasonable inferences therefrom in the light most favorable to the party opposing summary judgment.'" Id. at 3 (quotation omitted). This Court did exactly that—it construed facts in plaintiffs' favor. The Court has not ruled that American Family is precluded from a trial by jury on liability.

### CONCLUSION

For the reasons set forth above, American Family respectfully requests that the Court deny the Baldozier plaintiffs' and Plaintiff Schultz's motions to send supplemental notice.

15

DATED this 6th day of December, 2007.

Respectfully submitted,

*/s/ Julie M. Williamson*
Julie M. Williamson
Michael F. Mills
BIEGING SHAPIRO & BURRUS, LLP
4582 S. Ulster Street Parkway, Suite 1650
Denver, Colorado 80237
Tel: (720) 488-0220

Earl H. Munson
Sarah A. Zylstra
Catherine Cetrangolo
BOARDMAN, SUHR, CURRY & FIELD, LLP
One S. Pinckney St., Fourth Floor
P.O. Box 927
Madison, WI 53701-0927
Tel: (608) 257-9521

James P. DeNardo
McKENNA STORER
33 N. LaSalle Street, Suite 1400
Chicago, IL 60602
Tel: (312) 558-3922
*Attorneys for Defendant American Family Mutual Insurance Company*

## CERTIFICATE OF SERVICE

I hereby certify that on this 6th day of December, 2007, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

roberthill@hillandrobbins.com
ksugarman@reztlaw.com
johnwalsh@hillandrobbins.com
lleader@kentlaw.edu
lwalner@walnerclassaction.com
ecervantez@lchb.com
mrubin@altshulerberzon.com
jamesb@gattilaw.com

dal@reztlaw.com
tw@nettally.com
szieff@reztlaw.com
jfinberg@lchb.com
mhilicki@walnerclassaction.com
rickwynkoop@yahoo.com
hwong@lchb.com
pwmollica@mmmglaw.com

Respectfully submitted,

*/s/ Julie M. Williamson*
Julie M. Williamson
BIEGING SHAPIRO & BURRUS, LLP
4582 S. Ulster Street Parkway, Suite 1650
Denver, Colorado 80237
Tel: (720) 488-0220

67948