UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Wiley Y. Daniel**

Master Docket No. 06-cv-17430-WYD-CBS (MDL Docket No. 1743)

IN RE AMERICAN FAMILY MUTUAL INSURANCE CO. OVERTIME PAY LITIGATION

---

## ORDER

---

Daniel, Chief District Judge.

THIS MATTER is before the Court on American Family Mutual Insurance

Company's ("American Family") Motion to Dismiss *Baldozier* Plaintiffs' Rule 23 State

Law Claims, filed October 23, 2007 [#132]; American Family's Motion to Dismiss

*Schultz* Rule 23 State Law Claims, filed January 15, 2008 [#178]; *Baldozier* Plaintiffs'

Motion for Certification of State Law Classes, filed November 16, 2007 [#140]; and

Plaintiff Robert Schultz's Motion to Certify an Illinois State Law Class, filed December 2,

2007 [#151].

I.   Background

This matter is a consolidated action for unpaid overtime compensation and

related penalties and damages brought pursuant to section 16(b) of the Fair Labor

Standards Act ("FLSA"), 29 U.S.C. § 216(b) (2008), and various states' wage and

overtime laws.  The action is comprised of two consolidated cases including *Rocky

Baldozier, et al. v. American Family Mutual Insurance Co.*, District of Colorado Civil

Case No. 04-cv-02174, initially filed in this Court on October 20, 2004 (hereinafter

"*Baldozier*"), and a case initiated in the Northern District of Illinois styled *Robert Schultz

v. American Family Mutual Insurance Co.*, District of Colorado Civil Case No. 06-cv-

00322 (Northern District of Illinois Civil Case No. 04-cv-05512) (hereinafter "*Schultz*").

The cases were consolidated by the Judicial Panel on Multidistrict Litigation ("MDL") and

transferred to this Court as a single case on February 13, 2006.  I have entered

numerous Orders in *Baldozier* and in the consolidated case.  The following brief

overview of the procedural history of the two cases will provide context for my

determination of the pending motions to dismiss and motions for class certification.

      A.    *Baldozier*

     In *Baldozier*, initially filed in this Court on October 20, 2004, Plaintiffs Rocky

Baldozier, Eric Stack, Robert Reynolds,[1] and Jok Nicholson, brought both a collective

action FLSA claim,[2] and a class action claim pursuant to Federal Rule of Civil Procedure

23 based on the Colorado Minimum Wage Act, Colo. Rev. Stat. §§ 8-6-101 to -119

(2008).  On July 8, 2005, prior to consolidation of *Baldozier* and *Schultz*, I dismissed the

Colorado state law claim but approved the *Baldozier* Plaintiffs' Motion for Approval of

Hoffmann-La Roche Notice and granted "notice stage" certification of the *Baldoizer* case

as a collective action under section 16(b) of the FLSA.

     On August 5, 2005, pursuant to my Order granting initial "notice stage"

certification, a Notice and Consent to Join was sent to:  "All persons who are as of the

---

[1] On April 9, 2009, Plaintiffs filed a Statement Noting the Death of Plaintiff Robert Reynolds.

[2] Collective actions under the FLSA are expressly authorized by 29 U.S.C. § 216(b) in cases where the complaining employees are "similarly situated."  The determination of whether a group of employees are "similarly situated" is a two-step process.  *Thiessen v. Gen. Elec. Capital Corp.*, 267 F.3d 1095, 1102-03 (10th Cir. 2001).  First, the court makes an initial determination of whether the plaintiffs are "similarly situated" for purposes of notifying other potential plaintiffs of the case and providing them an opportunity to "opt-in" to the collective action.  *Id.* at 1103.  Then, at the conclusion of discovery, the court makes a second determination of whether the plaintiffs are "similarly situated" under a stricter standard. *Id.*

date of this Order, or at any point since October 20, 2001, have been employed by American Family Mutual Insurance Co., as Physical Damage Claim Analysts, Physical Damage Claim Representatives, or Physical Damage Claim Examiners." Notice was sent to 862 potential opt-ins in several states and, according to the Stipulated Notice of Filing of Special Master's Final Report, 124 individuals signed and filed a Consent to Join *Baldozier* [*Baldozier,* #134]. It appears that the *Baldozier* class is currently comprised of approximately 126 individuals (122 opt-in Plaintiffs,[3] plus the four named Plaintiffs).

On September 30, 2005, the *Baldozier* Plaintiffs moved for leave to amend the Complaint, and on November 28, 2005, they were granted leave to file a First Amended Complaint. The First Amended Complaint added four new Rule 23 class action claims under the wage and overtime laws of Wisconsin, Ohio, Minnesota, and Illinois. [*Baldozier*, #98-2; #130].[4] These new class action claims were brought pursuant to (1) Wisconsin Minimum Wage Law, Wis. Stat. §§ 104.001-.012 (2007-08), and the Wisconsin Wage Payments Claims and Collections Act, Wis. Stat. §§ 109.01-.12, by Patrick Kurtenbach on behalf of himself and all members of the Wisconsin class; (2) the Ohio Minimum Fair Wage Standards Act, Ohio Rev. Code Ann. §§ 4111.01-.17 (West 1994 & Supp. 2006), by Scott Donaldson on behalf of himself and all members of the

---

[3] Two of Plaintiffs who opted in to *Baldozier*, Traci Mason and David Snyder, have been dismissed pursuant to an order entered April 27, 2009.

[4] While the Stipulated Order granting Plaintiffs' Motion to Amend [*Baldozier*, #130] states that Plaintiffs First Amended Complaint will add class action claims under the laws of "Ohio, Illinois, Minnesota, and <u>Michigan</u>," a review of the First Amended Complaint reveals that the new class action claims are brought pursuant to the laws of Ohio, Illinois, Minnesota, and <u>Wisconsin</u> [*Baldozier*, #98-2].

Ohio class; (3) the Minnesota Fair Labor Standards Act, Minn. Stat. §§ 177.21-.35 (2005), by Troy Hansen on behalf of himself and all members of the Minnesota Class; and (4) the Illinois Minimum Wage Law, 820 Ill. Comp. Stat. § 105/1-1/15 (2008), by Craig Thayer on behalf of himself and all members of the Illinois class.  The *Baldozier* Plaintiffs initially sought to certify all four of the state law classes but later withdrew their request for certification of the Illinois class action in light of the separate motion to certify a class of Illinois plaintiffs in *Schultz*.

B.      *Schultz*

Plaintiff Robert Schultz filed his action in August 2004, in the District Court for the Northern District of Illinois, asserting a collective action FLSA claim, and Federal Rule of Civil Procedure 23 class action claims under the Illinois Minimum Wage Law, 820 Ill. Comp. Stat. § 105/1-1/15, and "similar statutes in the several states" of other adjusters. Prior to consolidation, the District Court for the Northern District of Illinois entered an Order granting "notice stage" certification of *Schultz* as a collective action pursuant to the FLSA, 29 U.S.C. § 216(b), and dismissing "any class claims based on the violation of the wage laws of states other than Illinois."  [*Schultz*, #78].  On January 30, 2006, several months after the Notice of the FLSA collective action was sent to over 800 American Family employees pursuant to the Order issued in *Baldozier*, the District Court for the Northern District of Illinois entered an Order Approving Sending of Notice of the *Schultz* collective action to:  "All persons who currently work or have worked for American Family as a Physical Damage Claim Representative, Physical Damage Claim Analyst and/or Physical Damage Claim Examiner at any time between January 25, 2003

and January 25, 2006." On April 26, 2006, the opt-in period in *Schultz* ended with approximately twenty-eight opt-in Plaintiffs, four of whom had already opted in to *Baldozier*.[5] Of the twenty-eight opt-ins, thirteen are from Illinois. Plaintiff Schultz now seeks certification of the Illinois state class action.

On February 20, 2009, I granted Plaintiffs' Motions for Approval of Supplemental Hoffmann-La Roche Notice, and I ordered that a single supplemental Notice and Consent to Join form should be sent to all individuals with job titles identified in the prior Notices as well as individuals with successor job titles hired by American Family after January 25, 2006, and that the claims of those potential opt-in plaintiffs should be tolled as of February 7, 2008. At the parties' request, Supplemental Notice has not yet been sent pending resolution of American Family's separate motion to decertify the FLSA collective action.

II.    Analysis:

Turning to the pending Motions, American Family requests dismissal of both the *Baldozier* Plaintiffs' Rule 23 state law class action claims based on the wage and overtime laws of Wisconsin, Ohio, Minnesota and Illinois, and the *Schultz* Rule 23 Illinois state law class action claim. American Family contends that I should decline to exercise supplemental jurisdiction over the state law class action claims. In *Schultz*, American Family alternatively requests that I reserve ruling on this issue in the event *Schultz* is eventually transferred back to the District Court in Northern District of Illinois.

_____

[5] Two of the Plaintiffs who opted in to *Schultz*, Todd Romazko and Mark Webb, have been dismissed pursuant to an order entered April 27, 2009.

A.     Class Action Fairness Act

As an initial matter, I address the *Baldozier* Plaintiff's contention that this Court

has original jurisdiction over the class action claims asserted in the First Amended

Complaint in *Baldozier* pursuant to the federal Class Action Fairness Act ("CAFA").  As

noted above, the original complaint in *Baldozier* was filed on October 20, 2004.  The

*Baldozier* Plaintiffs moved for leave to amend the Complaint and that motion was

granted by a Stipulation and Order entered November 28, 2005 [*Baldozier*, #130].  The

First Amended Complaint added four new Rule 23 class action claims under the wage

and overtime laws of Wisconsin, Ohio, Minnesota, and Illinois.

CAFA provides, in relevant part, that:

> The district courts shall have original jurisdiction of any civil
> action in which the matter in controversy exceeds the sum or
> value of $5,000,000 exclusive of interest and costs, and is a
> class action in which - (A) any member of a class of plaintiffs
> is a citizen of a State different from any defendant . . ..

CAFA applies to actions commenced on or after the Act's effective date of February 18,

2005.  *Prime Care of Ne. Kan., LLC v. Humana Ins. Co.*, 447 F.3d 1284, 1285 (10th Cir.

2006).  Here, the original Complaint in *Baldozier* was filed prior to CAFA's effective

date, but the First Amended Complaint was filed after CAFA's effective date.  In *Prime*

*Care*, the Tenth Circuit Court of Appeals held that the addition of new claims sufficiently

distinct from a prior pleading may "commence" a new action under CAFA if the new

claims do not "relate back" to the prior pleading.  *Prime Care*, 447 F.3d at 1286; *see*

*also Weber v. Mobil Oil Corp.*, 506 F.3d 1311, 1314 (10th Cir. 2007) ("If the amendment

relates back, the commencement date is the date of the original filing of the action

notwithstanding the amendment; if the amendment does not relate back, the action commences at the time of the amendment.").  The issue, therefore, is whether the class action claims asserted in the First Amended Complaint "relate back" to the original Complaint.  Both parties agree that resolution of this issue should be decided pursuant to federal law.  *See United States ex rel. Connor v. Salina Reg'l Health Ctr., Inc.*, 459  F. Supp. 2d 1081, 1093 (D. Kan. 2006) (when a complaint is filed originally in federal court and the supplemental state law claims are contained within an amended complaint, whether the claims "relate back" to the original complaint is determined under the Federal Rules of Civil Procedure).

The "relation back" rule set forth in Federal Rule of Civil Procedure 15(c)(1)(B) provides that an amended complaint relates back to the date of the original complaint when "the amendment asserts a claim . . . that arose out of the conduct, transaction, or occurrence set out–or attempted to be set out–in the original pleading."  Here, the new class action claims arose out of the same conduct alleged in the original Complaint; namely, the assertion that American Family improperly refused to pay certain of its claims adjusters overtime wages.  Citing *L.E. Whitham Construction Co. v. Remer*, 105 F.2d 371 (10th Cir. 1939), the *Baldozier* Plaintiffs contend that the Tenth Circuit does not apply the relation back rule where, as here, the First Amended Complaint adds new claims or causes of action and three new "opt-out plaintiff state law classes, which include many class members who are not in the FLSA collective action."  It is true that when an amendment to a pleading alleges an entirely different set of facts or a different transaction Rule 15(c) does not apply.  *See* Charles Alan Wright, Arthur R. Miller &

Mary Kay Kane, *Federal Practice and Procedure* § 1497, at 70-74 (2d ed. 1990). However, Rule 15(c) clearly states that addition of a new claim for relief will relate back so long as the new claim arose out of the "conduct, transaction, or occurrence" set out in the original pleading. Here, the new class claims meet the Rule 15 standard for relation back. While the new class claims are pled under different states' overtime statutes, both the state law class claims and the FLSA claim seek payment of unpaid overtime. Thus, the state law class claims merely add alternative theories of relief rather than wholly distinct claims. *See Robyn v. Phillips Petr. Co.*, 774 F. Supp. 587, 589-90 (D. Colo. 1991) (amendment changing basis for discrimination claim from Title VII to a claim under Colorado Antidiscrimination Act and adding additional allegations of religious discrimination related back).

The *Baldozier* Plaintiffs make much of the fact that the "named plaintiffs" for the new Rule 23 state law class claims were not parties to the originally-filed Complaint. However, all of the new "named" plaintiffs "opted in" to FLSA collective action prior to the filing of the First Amendment Complaint, and two of them - Kurtenbach and Donaldson - opted in prior to the time CAFA went into effect. Thus, the "named plaintiffs" in the state law class claims were not added to the lawsuit as "new" plaintiffs.

I find from the foregoing that the state law class action claims asserted in the First Amended Complaint in *Baldozier* relate back to the original Complaint and, therefore, the commencement date of this action is the date of the filing of the original Complaint notwithstanding the amendments. Because this action "commenced" prior to

CAFA's effective date, this Court does not have original jurisdiction over the state law class claims asserted in the First Amended Complaint.

B.    Supplemental Jurisdiction

"Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.  Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties."  28 U.S.C. § 1367(a).  Whether the state and federal claims form part of the same case or controversy turns on whether they "derive from a common nucleus of operative fact."  *United Mine Workers of Am. v. Gibbs,* 383 U.S. 715, 725 (1966).  Here, both the FLSA collective action claims and the various state law class action claims are based on allegations that American Family improperly refused to pay certain of its claims adjusters overtime wages.  Thus, both the federal opt-in collective action claims and the claims based on various state law wage and overtime schemes share a common nucleus of operative facts and are part of the "same case or controversy" under Article III.

However, the district courts are statutorily authorized to decline supplemental jurisdiction over a state law claim under subsection (a) if--

(1) the claim raises a novel or complex issue of State law,

(2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,

(3) the district court has dismissed all claims over which it has
original jurisdiction, or

(4) in exceptional circumstances, there are other compelling
reasons for declining jurisdiction.

28 U.S.C. § 1367(c). Therefore, the exercise of supplemental jurisdiction is

discretionary and "reflects the understanding that, when deciding whether to exercise

supplemental jurisdiction, 'a federal court should consider and weigh in each case, and

at every stage of the litigation, the values of judicial economy, convenience, fairness,

and comity.'" *City of Chicago v. Int'l Coll. of Surgeons,* 522 U.S. 156, 173 (1997)

(quoting *Carnegie-Mellon Univ. v. Cohill,* 484 U.S. 343, 350 (1988)).

American Family has articulated several arguments that would counsel against

the exercise of supplement jurisdiction over the state law class action claims in both

*Baldozier* and *Schultz.* American Family contends (1) that allowing so-called "hybrid"

opt-in collective actions and opt-out class actions under Federal Rule of Civil Procedure

23 thwarts congressional intent underlying the Portal-to-Portal Act amendments to the

FLSA; (2) that opt-in collective actions are inherently irreconcilable with Rule 23 opt-out

actions; (3) that the state law class claims will predominate over original jurisdiction

claims; and (4) that exercising supplemental jurisdiction to certify a state law class

alongside an FLSA collective action will render the case unduly confusing and

unmanageable. Apart from its arguments concerning supplemental jurisdiction,

American Family contends that "hybrid" actions do not meet the criteria of Rule 23(b)(3),

which requires that a Rule 23 class certification be superior to other available methods

for fair and efficient adjudication. In *Schultz*, American Family additionally asserts that I

should give close consideration to the law of the transferor court, in this case the District

Court for the Northern District of Illinois, because several courts in that District have

declined to permit "hybrid" actions in cases similar to *Schultz*.

The propriety of exercising supplemental jurisdiction over Rule 23 class action

claims in cases where the court has original jurisdiction over an FLSA collective action

has not yet been addressed by the District of Colorado or the Tenth Circuit Court of

Appeals, and decisions from the several district and circuit courts that have addressed

the issue are split. I have considered the voluminous case law cited by the parties in

their motions, responses, and replies, and, on balance, I find the reasoning articulated

in the cases cited by American Family to be more persuasive. As an initial matter, I

agree with American Family that there are significant differences in the procedural

management of class actions brought pursuant to Federal Rule of Civil Procedure 23

and collective actions brought pursuant to the FLSA. The most obvious difference is the

manner in which prospective plaintiffs join a Rule 23 class action versus a collective

action, and the level of personal participation by prospective plaintiffs once they have

joined.

In a Rule 23 class action, once a class is certified, all persons within the class

definition are automatically participants in the action unless they affirmatively "opt out."

Individual participation by class members is limited in a Rule 23 class action. For

example, class member plaintiffs in a Rule 23 class action are generally not subject to

individualized discovery, and the class action proceeds on a representative basis. On

the other hand, as discussed in previous Orders, the passage of the Portal-to-Portal Act

amendments to the FLSA changed the procedures for filing FLSA actions from a "representative" action, similar to a Rule 23 class action, to an "opt-in" scheme requiring a potential participant to file a written consent to participate in the FLSA action and to be bound by its judgment. *See* Section 5 of the Portal-to-Portal Act of 1947, Pub. L. 49, ch. 52, 61 Stat. 87; 29 U.S.C. § 216(b) ("No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought . . . ."); *Dolan v. Project Constr. Corp.*, 725 F.2d 1263, 1266 (10th Cir. 1984).

Congress specifically abandoned a representative, opt-out scheme and created the current opt-in procedures for FLSA actions in response to "excessive litigation spawned by plaintiffs lacking a personal interest in the outcome," in order to limit "private FLSA plaintiffs to employees who asserted claims in their own right," and to free "employers from the burden of representative actions." *Hoffmann-La Roche Inc.,* 493 U.S. 165, 173 (1989). "The opt-in language of § 216(b) was a direct result of this clear congressional dissatisfaction with the original class action provisions of the FLSA" and was designed to "limit the burden on the defendant and the participation of the court." *Dolan,* 727 F.2d at 1267. Unlike a Rule 23 class action, once a FLSA collective action is initially certified upon a determination that a group of employees are "similarly situated," the opt-in plaintiffs may be subject to some individualized discovery, following which they will be required to demonstrate that they are "similarly situated" under a stricter standard. *Thiessen*, 267 F.3d at 1102-3.

As the Third Circuit noted "mandating an opt-in class or an opt-out class is a crucial policy decision." *De Asencio v. Tyson Foods, Inc.*, 342 F.3d 301, 311 (3d Cir. 2003). "The FLSA's opt-in provision directly contrasts with Rule 23's opt-out scheme and demonstrates Congress's intent to ensure that parties with wage and hour claims under the FLSA take affirmative steps to become members of a class seeking redress of those claims in federal court." *McClain v. Leona's Pizzeria, Inc.*, 222 F.R.D. 574, 577 (N.D. Ill. 2004).

I agree with American Family that exercising supplemental jurisdiction over separate state law class actions in *Baldozier* and *Schultz*, which are comprised in part of individuals who have already received notice of the FLSA case and have chosen not to participate, would undermine Congress's intent to limit the number of plaintiffs in a FLSA action to those who "asserted claims in their own right" and its desire to free employers "from the burden of representative actions." *Hoffmann-La Roche*, 493 U.S. at 173. In addition, allowing a "hybrid" action to proceed would permit Plaintiffs to bring in a large number of new class members (potentially more than twice the number of the existing opt-in plaintiffs in both *Baldozier* and *Schultz*) who are not subject to the opt-in requirements, not subject to any individualized discovery, and not required to demonstrate they are similarly situated under the *Thiessen* standard. As the Third Circuit noted in *De Asencio*, aggregation of a FLSA collective action and class action claims "profoundly affects the substantive rights of the parties to the litigation . . . [including] the dynamics for discovery, trial, negotiation and settlement . . . ." *De Asencio*, 342 F.3d at 310; *see also McClain*, 222 F.R.D. at 577 ("[the plaintiff] cannot

circumvent the opt-in requirement and bring unnamed parties into federal court by calling upon state statutes similar in substance to the FLSA that lack the opt-in requirement."); *Williams v. Trendwest Resorts, Inc.*, No. 2:05-cv-0605, 2007 WL 2429149, at *4 (D. Nev. Aug. 20, 2007) (same); *Moeck v. Gray Supply Corp.*, No. 03-1950, 2006 WL 42368, at *5 (D.N.J. Jan. 6, 2006) (same).

These concerns constitute a "compelling reason" to decline supplemental jurisdiction under section 1367(c)(4). I further note that if *Schultz* proceeds to trial, it will be transferred back to the District Court for the Northern District of Illinois. *Lexecon, Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26, 40-41 (1998). I find it significant that an overwhelming majority of decisions from the Northern District of Illinois have declined to allow state law class action claims to proceed with an FLSA collective action.[6] Although decisions of the transferor court are not binding, they are worth close consideration particularly when so many decisions addressing this precise issue, including a recent decision from the transferor Judge, have declined to allow 'hybrid' cases. Moreover, given the fundamental differences between the opt-out class action scheme under Rule 23 and the opt-in collective action scheme mandated by the FLSA, I question whether the values of judicial economy, convenience, and fairness are

_____

[6] *See Riddle v. Nat. Sec. Agency, Inc.*, No. 05 C 5880, 2007 WL 2746597, at *3 (N.D. Ill., Sept. 13, 2007) (J. Guzman); *McClain v. Leona's Pizzeria, Inc.*, 222 F.R.D. 574, 577 (N.D. Ill. 2004); *Harper v. Yale Int'l Ins. Agency, Inc.*, No. 03 C 3789, 2004 WL 1080193, at *3-5 (N.D. Ill., May 12, 2004); *De La Fuente v. FPM Ipsen Heat Treating, Inc.*, No. 02 C 50188, 2002 WL 31819226, at *1 (N.D. Ill, Dec. 16, 2002); *Muecke v. A-Reliable Auto Parts & Wreckers, Inc.*, No. 01 C 2361, 2002 WL 1359411, at *2 (N.D. Ill., June 21, 2002); *Rodriguez v. The Texan, Inc.*, No. 01 C 1478, 2001 WL 1829490, at *2 (N.D. Ill., Mar. 7, 2001).

served by exercising supplemental jurisdiction over "hybrid" actions.  *See Int'l Coll. of Surgeons,* 522 U.S. at 173.

In addition, I have concerns that the opt-out state law class action claims would substantially predominate over the FLSA claim.  These concerns are particularly relevant in *Baldozier* where Plaintiffs have asked this Court to exercise supplemental jurisdiction over three separate state law class actions arising under the wage and hour laws of four states - none of which is Colorado.  Generally, courts may decline to exercise supplemental jurisdiction where state law claims "predominate" in terms of "proof, the scope of issues raised or in the comprehensiveness of the remedy sought." *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966).   Several of the courts in other jurisdictions have declined to exercise supplemental jurisdiction over "hybrid" actions based on concerns that the state law class action claims would substantially predominate over the FLSA collective action.  *See De Asencio*, 342 F.3d at 312; *Neary v. Metro. Prop. and Cas. Ins. Co.*, 472 F. Supp. 2d 247, 251-52 (D. Conn. 2007); *Leuthold v. Destination Am., Inc.*, 224 F.R.D. 462, 470 (N.D. Cal. 2004); *Jackson v. City of San Antonio*, 220 F.R.D. 55, 60 (W.D. Tex. 2003); *Luciano v. Eastman Kodak Co.*, No. 05-cv-6463T, 2006 WL 1455477, *5 (W.D.N.Y. May 25, 2006).  In these cases, the courts have focused on the size of the state law class action as compared with the FLSA collective action, the different terms of proof required by the state law class actions, and whether the FLSA collective action "is an appendage to the more comprehensive state action." *De Asencio*, 342 F.3d at 312.  In *De Asencio*, the Third Circuit observed that

> [p]redomination under section 1367 generally goes to the type
> of claim, not the number of parties involved.  But the disparity
> in numbers may be so great that it becomes dispositive by
> transforming the action to a substantial degree, by causing the
> federal tail represented by a comparatively small number of
> plaintiffs to wag what is in substance a state dog.

*De Asencio*, 342 F.3d at 311.

Here, American Family contends that if the four new class actions in *Baldozier* and *Schultz* are certified, notice would be sent to nearly 350 adjusters in four states (some of whom would be receiving notice for the third time), despite the fact that at least 300 of these individuals have already declined to participate in this case.  If the state law class actions are certified, this consolidated case would be comprised of approximately 150 opt-in collective action plaintiffs (including both *Baldozier* and *Schultz* plaintiffs), and up to 349 plaintiffs who are members of one of four separate state law class actions.  Of those 349 plaintiffs, approximately forty-eight would also be members of the FLSA opt-in collective action.[7]

Thus, in *Baldozier*, exercising supplemental jurisdiction over the state law class action claims (assuming those claims were certified) would mean up to 276 plaintiffs would belong to one of three state law class actions, as compared to 126 plaintiffs that belong to the FLSA collective action.  In *Schultz*, up to seventy-three plaintiffs would belong to the Illinois state law class action as compared to twenty-four plaintiffs that

---

[7] Of the 350 adjusters in Wisconsin, Ohio, Minnesota, and Illinois who already received notice (some who also received notice of *Schultz*), 302 of them have already declined to participate in this case.  According to American Family, out of the seventy-three adjusters in Illinois, five have opted-in to *Baldozier* (with one of the five also opting into *Schultz*); out of the 79 Minnesota adjusters, fourteen opted-in to *Baldozier*; out of the sixty-three Ohio adjusters, ten opted-in to *Baldozier* (with one of the 10 also opting into *Schultz*); and out of the 134 Wisconsin adjusters, eighteen opted-in to *Baldozier*.

belong to the FLSA collective action.  While the numerical disparity between class action and collective action plaintiffs described here is not as great as in some of the cases cited by American Family, I find that the disparity is significant enough to transform the FLSA collective actions "to a substantial degree."  *De Asencio*, 342 F.3d at 311.

In addition to the disparity between the number of plaintiffs in the FLSA collective actions and the number of potential state law class action plaintiffs, many of whom have twice declined to join the FLSA collective action, I must also emphasize that exercising supplemental jurisdiction in *Baldozier* would mean exercising jurisdiction over three separate state law class actions, involving three different state law overtime schemes - none of which involves the laws of the state of Colorado.  I note that the vast majority of courts to consider the propriety of exercising supplemental jurisdiction in cases such as this, where multiple Rule 23 class actions are involved, have declined to exercise supplemental jurisdiction.  *See*, *e.g.*, *Neary*, 472 F.Supp.2d at 252-53 (where the proposed class involves multiple states' wage and hour statutes, each with potential novelties, such claims would substantially predominate over the FLSA claims); *see also Luciano,* 2006 WL 1455477, at *5; *Aquilino v. Home Depot U.S.A., Inc.*, No. 04-cv-4100, 2006 WL 2023539, at *3 (D.N.J. July 17, 2006).  *But see Brickey v. Dolencorp., Inc.*, 244 F.R.D. 176, 178-79 (W.D.N.Y. 2007).

The parties acknowledge that there are differences between the FLSA standard and the state overtime laws in Minnesota, Wisconsin, and Illinois.  For example, Plaintiffs acknowledge that in order to prove an employee is "exempt" from the overtime

requirements under the laws of Minnesota and Wisconsin, a defendant must demonstrate that the employee exercises a higher level of "discretion and independent judgment" than what is required under the standard status set forth in the FLSA. *See* Minn. R. 5200.0180; Wis. Admin. Code DWD § 274.04. In addition, Wisconsin has an administrative rule that exempt employees cannot devote more than twenty percent of the hours worked to activities which are not directly and closely related to exempt work. *See* Wis. Admin. Code DWD § 274.04(1)(b).

Plaintiffs contend that these differences do not demonstrate the existence of any "novel or complex issue of state law" but merely require that the fact-finder answer some state-specific questions based on the same or a substantially similar body of evidence it uses to answer the FLSA question. I find that Plaintiffs understate the potential confusion these different state law schemes would cause. The fact-finder will be required to decipher between the federal standard and up to three subtly different state law standards, and recall and work through the evidence presented concerning each prong of the exemption test in the context of each different scheme. *See Glewwe v. Eastman Kodak Co.*, No. 05-cv-6462T, 2006 WL 1455476, at *4 (W.D.N.Y. May 25, 2006) (where a number of state law schemes are involved, the state claims substantially predominate, and "[s]uch a diverse undertaking deserves the individualized analysis and attention that each state court would provide."); *Guerrero v. North Carolina Grower's Ass'n. Inc.*, 338 F. Supp. 2d 649, 652-53 (E.D.N.C. 2004) (declining supplemental jurisdiction over state law class action and noting the size of any potential state law class, the request for three different subclasses, and the potential for confusion of

plaintiffs who could be "confounded by the fact that the collective action under the FLSA is an 'opt-in' class while the proposed class action under Rule 23 is an 'opt-out' class."). Finally, I note that the Plaintiffs in both *Baldozier* and *Schultz* have requested injunctive relief. Injunctive relief is not available under the FLSA, therefore, I must conclude that Plaintiffs seek injunctive relief in conjunction with their state law class action claims. Thus, the scope of relief sought by Plaintiffs in conjunction with their state law class action claims is broader than what is available under federal law. In addition, the availability of injunctive relief under the various state law schemes is unsettled. It appears that the Minnesota Court of Appeals has determined that employees can receive injunctive relief for state overtime claims. *See Milner v. Farmers Ins. Exch.*, 725 N.W.2d 138, 143 (Minn. Ct. App. 2006). However, the availability of injunctive relief under state wage and overtime laws has not yet been addressed by state courts in Wisconsin, Ohio and Illinois. The availability of injunctive relief under the laws of Wisconsin, Ohio and Illinois is more appropriately decided by those states' courts than a federal district court sitting in Colorado.

Given the number of potential class action plaintiffs in relation to the collective action plaintiffs that have affirmatively chosen to join the two consolidated cases, the differences in terms of the scope of proof between the FLSA and the various state law schemes of Minnesota, Wisconsin, and Illinois, Plaintiffs' request for injunctive relief, and the difficulty in simultaneously managing both the FLSA collective action and various state law class actions, I conclude that the state law claims will substantially predominate over the FLSA claims over which I have original jurisdiction pursuant to

28 U.S.C. § 1367(c)(2), and that judicial economy, convenience, fairness and comity would be best served by declining to exercise supplemental jurisdiction under the circumstances presented in this case. I further conclude that exercising supplemental jurisdiction over separate state law class actions in *Baldozier* and *Schultz* would undermine Congress' intent to limit the number of plaintiffs in an FLSA action to those who "asserted claims in their own right," and allow Plaintiffs to circumvent the opt-in requirements mandated by Congress for collective actions. Therefore, I decline to exercise supplemental jurisdiction over the proposed class action claims arising under the wage and overtime laws from the States of Illinois, Minnesota, Wisconsin and Ohio pursuant to 28 U.S.C. § 1367(c)(2) & (4). And because I decline to exercise supplemental jurisdiction, I need not address American Family's remaining arguments or Plaintiffs' request for certification of the state law class actions.

III.     Conclusion:

Accordingly, for the reasons set forth herein, it is hereby

ORDERED that American Family's Motion to Dismiss *Baldozier* Plaintiffs' Rule 23 State Law Claims, filed October 23, 2007 [#132] is **GRANTED**. It is

FURTHER ORDERED that American Family's Motion to Dismiss *Schultz* Rule 23 State Law Claims, filed January 15, 2008 [#178] is **GRANTED**. It is

FURTHER ORDERED that the *Baldozier* Plaintiffs' Motion for Certification of State Law Classes, filed November 16, 2007 [#140] is **DENIED AS MOOT**, and the *Baldozier* Plaintiffs' Second, Third, Fourth, and Fifth claims for relief in its First Amended Complaint are **DISMISSED WITHOUT PREJUDICE**. It is

FURTHER ORDERED that Plaintiff Robert Schultz's Motion to Certify an Illinois State Law Class, filed December 2, 2007 [#151] is **DENIED AS MOOT**, and Schultz's Second Claim for Relief, based on Illinois State law, is **DISMISSED WITHOUT PREJUDICE**.  It is

FURTHER ORDERED that American Family's Motion for Leave to Supplement Its Response Opposing the *Baldozier* and *Schultz* Motions for Rule 23 Certification of State Law Classes, filed November 28, 2008 [#290] is **DENIED AS MOOT**.

Dated:  July 28, 2009

BY THE COURT:


s/ Wiley Y. Daniel
Wiley Y. Daniel
Chief United States District Judge